**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,**<br><br>**Defendants.** | **Case No. 3:20-CV-00188** |

**COMPLAINT**

Plaintiffs Danielle Threadford and William Holmes, by their undersigned attorneys, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and similarly situated participants in the Plan and their beneficiaries, allege upon personal knowledge, the investigation of their counsel, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

**BACKGROUND**

1.     Plaintiffs Danielle Threadford and William Holmes ("Plaintiffs") bring this suit against Horizon Trust and Investment Management, N.A. ("Horizon"), the trustee for the McKinney Communications Corporation Employee Stock Ownership Plan (the "Plan") when the

Plan acquired shares of McKinney Communications Corporation ("McKinney") in 2016, and against selling shareholders Roddy McKinney and Janice McKinney (the "Selling Shareholders").

2.      Plaintiffs are participants in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who were vested in shares of McKinney allocated to their accounts in the Plan.

3.      This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by Horizon when it caused the Plan to buy shares of McKinney for more than fair market value in 2016 and other relief.

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      At all relevant times, McKinney was a privately held company and a party in interest to the Plan. In or about November 2016, the Plan purchased 1,000,000 shares of McKinney's common stock, representing 100% of the outstanding shares, for $65,483,225, which was financed by a loan from McKinney of $65,483,225 bearing interest at the prime rate of the lender, which for 2016, 2017 and 2018 averaged 1.95% , to be repaid over 25 years (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, McKinney became 100% employee owned.

6.      Horizon represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf.

7.      The ESOP Transaction allowed the Selling Shareholders to unload their interests in McKinney above fair market value and saddle the Plan with tens of millions of dollars of debt over

a 25-year repayment period to finance the Transaction. Horizon failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiffs.

8.       Roddy McKinney and Janice McKinney, the Selling Shareholders, are parties in interest who sold shares in the ESOP Transaction. The Selling Shareholders are liable under ERISA for participating in the prohibited transactions and in Horizon's breaches of fiduciary duty.

9.       Plaintiffs bring this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by them and similarly situated participants, resulting from Horizon's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching its fiduciary duties under ERISA, and the Selling Shareholders' participation in these violations.

## JURISDICTION AND VENUE

10.       This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Horizon to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against Horizon and the Selling Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.       This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.       Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant Horizon resides or may be found in this District, and because

some of the events or omissions giving rise to the claims occurred in this District. Horizon's headquarters is located at 515 Franklin St., Michigan City, Indiana 46360.

## PARTIES

13.     Plaintiff Danielle Threadford is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on January 1, 2016. Plaintiff Threadford resides in Birmingham, Alabama. She was a Customer Services Representative at Satellites Unlimited, Inc., an affiliated company to McKinney. She was employed there from on or about May 16, 2013 to on or about June 6, 2019. She was vested by the Plan's terms in shares of McKinney in her Plan account.

14.     Plaintiff William Holmes is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on January 1, 2016. Plaintiff Holmes resides in Alabaster, Alabama. He was a Satellite Technician at Satellites Unlimited, Inc., an affiliated company to McKinney. He was employed there from on or about January 2009 to on or about September 2019. He was vested by the Plan's terms in shares of McKinney in his Plan account.

15.     Defendant Horizon provides investment management services, offering estate and retirement planning, financial management, and trust services. Its headquarters is at 515 Franklin St., Michigan City, Indiana 46360. Horizon's parent is Horizon Bank, a bank holding company headquartered at the same location.

16.     Horizon was the Trustee of the Plan at the time of the ESOP Transaction. Horizon was a "fiduciary" under ERISA because it was the Trustee. As Trustee, Horizon had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to

authorize and negotiate the ESOP Transaction on the Plan's behalf. Horizon was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all times that it was Trustee of the Plan.

17.     Horizon's power and authority does not include the power and authority to interpret the terms of the written Plan document.

18.     Defendant Roddy McKinney was a selling shareholder in the ESOP Transaction. Roddy McKinney was a founder of McKinney. He was a Director of McKinney before and after the ESOP Transaction. Roddy McKinney was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), as a McKinney director at the time of the ESOP Transaction.

19.     Defendant Janice McKinney was a selling shareholder in the ESOP Transaction. Janice McKinney was a founder of McKinney. She was a Director of McKinney before and after the ESOP Transaction. Janice McKinney was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), as a McKinney director at the time of the ESOP Transaction.

20.     Roddy McKinney and Janice McKinney were 10 percent or more shareholders of McKinney at the time of the ESOP Transaction. As such, they were parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction.

21.     Roddy McKinney and Janice McKinney were owners, direct or indirect, of 50% or more of the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of McKinney, a corporation that was an employer with employees covered by the Plan at the time of the ESOP Transaction. As such, they were parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction.

22.     Roddy McKinney and Janice McKinney were spouses at the time of the ESOP Transaction. As such, they were relatives under ERISA § 3(15), 29 U.S.C. § 1002(15), and parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction.

## **FACTUAL ALLEGATIONS**

23.     Headquartered in Birmingham, Alabama, McKinney is the holding company of entities including Satellites Unlimited, Digital Electronic Supply, and Pixsys Technologies. McKinney bills itself as a telecommunications company, providing the highest quality video, data, and music solutions to customers across the southern U.S.  McKinney has 17 offices that cover eight states in the southeast U.S. It is the exclusive Dish installation provider for over 2,400 postal zip codes. McKinney has more than 350 technicians and more than 100 support staff. McKinney was at all times a private company. There is and was no public market for McKinney stock.

24.     McKinney was formed in 2016 by Roddy McKinney and Janice McKinney.

25.     McKinney was incorporated in Delaware on August 22, 2016.

26.     McKinney is headquartered at 138 Citation Court, Birmingham, Alabama 35209.

27.     McKinney stock is not readily tradable on an established securities market.

28.     McKinney adopted the Plan effective January 1, 2016.

29.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

30.     McKinney identified the Plan as intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of McKinney.

31.     The Plan's principal asset was McKinney stock at all times since the ESOP Transaction.

32.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

33.     The Plan's Summary Plan Description ("SPD") states: "The continued success of the Plan is dependent upon our individual and team efforts to improve performance." It also tells participants: "By working efficiently and effectively, you may help increase the value of your Plan Accounts."

34.     McKinney is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

35.     Employees of McKinney and its affiliated companies participate in the Plan.

36.     Satellites Unlimited is and was from the inception of the Plan one of McKinney's affiliated companies.

37.     McKinney is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

38.     The Plan's Forms 5500 report at Part II Lines 2a & 3a that McKinney is the Plan's administrator.

39.     McKinney is and was an ERISA fiduciary to the Plan as its administrator.

40.     The Schedule H, Line 4i -Schedule of Assets (Held At End of Year) to the Plan's Forms 5500 Annual Return/Report for plan years ending December 31, 2016, December 31, 2017, and December 31, 2018 reports in column (a) that McKinney is a party in interest to the Plan.

41.     McKinney is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

42.     McKinney's duties as Plan Administrator were delegated to the ESOP Committee, which is appointed by McKinney's Board of Directors.

43.     At the time of the ESOP Transaction, the members of the ESOP Committee were Daniel J. McKinney and R. Lee McKinney, II—both sons of the Selling Shareholders—and Troy Lugo.

44.     At the time of the ESOP Transaction and continuing to present, the McKinney Board of Directors included Roddy McKinney, Janice McKinney, Daniel J. McKinney, and R. Lee McKinney, II.

45.     At the time of the ESOP Transaction and continuing to present, Daniel J. McKinney was the Chief Executive Officer (CEO) of McKinney.

46.     McKinney appointed Horizon as Trustee of the Plan. As Trustee, Horizon had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for McKinney stock.

47.     As Trustee for the Plan, it was Horizon's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and McKinney, including acquisitions of McKinney stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

48.     In or about November 2016, the Plan purchased from the Selling Shareholders 1,000,000 shares of McKinney's common stock for $65,483,225.

49.     At that time, McKinney became 100% employee owned.

50.     The Plan's purchase of the McKinney shares was financed by a loan from McKinney of $65,483,225, bearing interest at the prime rate of the lender, which for 2016, 2017 and 2018 averaged 1.95%, to be repaid over 25 years.

51.     Plaintiff Threadford was allocated shares of McKinney stock in her individual account in the Plan in 2016, 2017, and 2018. She was 100% vested in her McKinney shares.

52.     Plaintiff Holmes was allocated shares of McKinney stock in his individual account in the Plan in 2016, 2017, and 2018. He was 100% vested in his McKinney shares.

53.     The Selling Shareholders were the shareholders of McKinney stock at the time of the ESOP Transaction.

54.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. McKinney provided financial projections to Horizon for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic, and the Selling Shareholders knew or should have known that this was the case.

55.     The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction, as 10 percent or more shareholders of McKinney, directly or indirectly; and/or as directors of McKinney or persons with powers or responsibilities similar to directors; and/or as owners, direct or indirect, of 50% or more of the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of McKinney; and/or as officers of McKinney or persons with powers or responsibilities similar to officers; and/or as employees of McKinney; and/or as relatives of a party in interest.

56.     The Notes to Financial Statements in the Plan's Forms 5500 report that the stock and loan transactions in the ESOP Transaction were related party and party in interest transactions.

57.     McKinney Capital, a separate company from McKinney, touts itself as "a family office managing the business interests of the McKinney Family of Vestavia Hills, Alabama." McKinney Capital lists its "control investments" to include Satellites Unlimited, Digital Electronic Supply, and Pixsys Technologies, which are wholly-owned by McKinney, the holding company

owned by the Plan. McKinney Capital's control investments are "companies we control directly or through majority board positions." Roddy McKinney, Janice McKinney, Daniel J. McKinney, and R. Lee McKinney, II serve on McKinney Capital's Board of Directors, as well as McKinney's Board of Directors.

58.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan did not receive a discount for lack of control and paid a control premium for McKinney even though the Plan did not obtain control over McKinney upon its purchase of the Company, as the Selling Shareholders continued to control the company. After the ESOP Transaction, the Selling Shareholders retained control of McKinney with Roddy McKinney, Janice McKinney, Daniel J. McKinney, and R. Lee McKinney, II maintaining positions as McKinney directors, and Daniel J. McKinney maintaining his position at CEO. Selling Shareholders who held warrants had rights to designate members of the McKinney board of directors. McKinney Capital continued to tout Satellites Unlimited, Digital Electronic Supply, and Pixsys Technologies as its "control investments" even though they were owned by McKinney, which was owned by the Plan. Application of a control premium was an incorrect valuation methodology. The Plan therefore overpaid for McKinney stock.

59.     As Trustee, Horizon is liable for causing the Plan to pay more than fair market value for McKinney stock as a result of the failure to receive a discount for lack of control, the payment of a control premium where previous owners retained control of McKinney, and/or other factors in Horizon's decision to purchase McKinney stock for the Plan in the ESOP Transaction.

60.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery. Horizon did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. Horizon's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for McKinney stock in the ESOP Transaction due to Horizon's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the valuation of McKinney stock in the ESOP Transaction faulty.

61.    Incentives to Horizon to act in favor of the Selling Shareholders in the ESOP Transaction included the possibility of business from sellers of companies who understood that Horizon applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

62.    Horizon is liable to the Plan for the difference between the price paid by the Plan and the actual value of McKinney shares at the time of the ESOP Transaction.

63.    The Selling Shareholders are liable to the Plan to repay the difference between the price they received and the actual value of McKinney shares at the time of the ESOP Transaction.

64.    Horizon has received consideration for its own personal account from McKinney for its services in the ESOP Transaction in the form of fees, under a contract made when the Selling Shareholders owned McKinney.

65.     The Notes to Financial Statements of the Plan's 2016 Form 5500 explains that the Plan's administrative expenses—including but not limited to trustee, appraisal, and legal expenses—were paid by McKinney.

66.     The Notes to Financial Statements of the Plan's 2016 Form 5500 explains that as a service provider to the Plan, Horizon was and is a party in interest under ERISA.

67.     Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Pursuant to Horizon's engagement agreement, McKinney, at a time that it was owned by the Selling Shareholders, agreed to indemnify Horizon as Plan Trustee in connection with the ESOP Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation. The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406. The indemnification agreement does not require payment of interest or otherwise account for the time value of money should Horizon ultimately be required to reimburse McKinney.

68.     The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because Horizon violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

69.     Payment by McKinney of millions of dollars of attorneys' fees, costs and litigation expenses to Horizon necessarily would adversely impact McKinney's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Horizon's defense costs by

McKinney, or the Plan that owns it, would adversely affect the Plan and Plaintiffs' and other participants' financial interests.

70.     Advancing of millions of dollars in attorneys' fees, costs and litigation expenses to Horizon necessarily would adversely impact McKinney's equity value and therefore the value of Plan assets even if Horizon is eventually ordered to reimburse McKinney.

## CLAIMS FOR RELIEF

### COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against Horizon**

71.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

72.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Horizon, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here McKinney stock, with a party in interest, here the Selling Shareholders Roddy McKinney and Janice McKinney, as took place in the ESOP Transaction.

73.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Horizon from causing the Plan to borrow money from a party in interest, here McKinney, as took place in the ESOP Transaction.

74.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Horizon from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders Roddy McKinney and Janice McKinney, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for McKinney stock and in continuing payments on the loan.

75.     The stock and loan transactions between the Plan and the parties in interest were authorized by Horizon in its capacity as Trustee for the Plan.

13

76.     Horizon caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

77.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

78.     Horizon caused the Plan to acquire McKinney stock from the Selling Shareholders above fair market value and with the proceeds of a loan that was used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though Horizon was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

79.     Horizon received consideration for its own personal account from McKinney—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

80.     Horizon caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

81.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

82.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

83.     Horizon has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Horizon**

84.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

85.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

86.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

87.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any

losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

88.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

89.     Horizon was required to undertake an appropriate and independent investigation of the fair market value of McKinney stock in or about November 2016 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the McKinney stock purchased by the Plan.

90.     Horizon breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

91.     Horizon has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B),
### 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Horizon

92.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

93.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve Horizon, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

94.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

95.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

96.     The indemnification agreement purports to provide payment or reimbursement for the benefit of Horizon for its losses, including but not limited to attorneys' fees.

97.     To the extent that the indemnification agreement attempts to relieve Horizon of its responsibility or liability to discharge its duties under ERISA, or attempts to have McKinney (a Plan-owned company) and thereby the Plan be responsible for Horizon's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

98.     To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

99.     As a result of the foregoing, should it be held liable under the preceding Count I, Horizon should be ordered to disgorge any indemnification payments made by McKinney and/or the Plan, plus interest.

## COUNT IV

### Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against Roddy McKinney and Janice McKinney

100.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

101.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

102.     The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

103.     As a result of the prohibited transactions described above, the Selling Shareholders Roddy McKinney and Janice McKinney received Plan assets in payments above fair market value for their McKinney stock.

104.     The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

105.     The Selling Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their McKinney stock in the ESOP Transaction, (3) that Horizon was a fiduciary to the Plan, (4) that the ESOP Transaction was for above fair market value, (5) that Horizon caused the Plan to engage in transactions prohibited under ERISA § 406(a) and

(b), 29 U.S.C. § 1106(a) and (b), (6) that Horizon breached its fiduciary duties under ERISA, and (7) that the true purpose of the ESOP Transaction was to benefit the Selling Shareholders.

106.    As directors of McKinney and as Selling Shareholders, Defendants Roddy McKinney and Janice McKinney were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, the Selling Shareholders are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

107.    The Selling Shareholders have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

108.    The Selling Shareholders are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## CLASS ACTION ALLEGATIONS

109.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the McKinney Communications Corporation Employee Stock Ownership Plan (the "Plan") and the beneficiaries of such participants as of the date of the 2016 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold the stock of McKinney Communications Corporation ("McKinney") to the Plan in 2016, and their immediate families; the directors and officers of McKinney and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

110.    The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiffs at this time, the Plan's most recent Form 5500 filing reports that as of December 31, 2018, there were 466 participants in the Plan.

111.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i.    Whether Horizon served as Trustee in the Plan's acquisition of McKinney stock;

ii.    Whether Horizon was an ERISA fiduciary of the Plan;

iii.    Whether Horizon caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase McKinney stock and take loans from parties in interest;

iv.    Whether Horizon engaged in a good faith valuation of the McKinney stock in connection with the ESOP Transaction;

v.    Whether Horizon caused the Plan to pay more than fair market value for McKinney stock;

vi.    Whether Horizon engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

vii.    Whether Horizon engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

    viii.  Whether Horizon breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of McKinney stock in or about November 2016;

    ix.  Whether McKinney was a party in interest;

    x.  Whether the Selling Shareholders were parties in interest;

    xi.  Whether Roddy McKinney and Janice McKinney, as parties in interest, participated in the prohibited transactions;

    xii.  The amount of losses suffered by the Plan and its participants as a result of Horizon's and the Selling Shareholders' ERISA violations; and

    xiii.  The appropriate relief for Horizon's and the Selling Shareholders' violations of ERISA.

112.    Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts because the Plan paid above fair market value and took on excessive loans for McKinney stock, resulting in them being allocated fewer shares of stock, and they continue to suffer such losses in the present because Horizon failed to correct the overpayment by the Plan.

113.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

114.    Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Horizon, and/or because

adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

115.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.    Declare that Defendant Horizon caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.    Declare that Defendants Roddy McKinney and Janice McKinney engaged in a prohibited transaction with the Plan in violation of ERISA;

C.    Declare that Defendant Horizon breached its fiduciary duties under ERISA to the Plan and the class members;

D.    Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it, he, or she has made through use of assets of the Plan;

E.    Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

F.    Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

G.    Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendant Horizon's breaches of ERISA;

H.    Declare that the indemnification agreement between Defendant Horizon and McKinney violates ERISA § 410, 29 U.S.C. § 1110;

I.    Order Defendant Horizon to reimburse McKinney for any money paid by McKinney under any indemnification agreement between Horizon and McKinney, plus interest;

J.    Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.    Order Defendant Horizon to disgorge any fees it received in conjunction with its services as Trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

L.    Order Defendants to pay prejudgment and post-judgment interest;

M.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel; and

N.    Award such other and further relief as the Court deems equitable and just.

Dated: February 28, 2020

Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Patrick O. Muench*
Patrick O. Muench
333 S. Wabash Ave.
Suite 2736
Chicago, IL 60604
Telephone: (312) 995-7143
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Gregory Y. Porter (*pro hac vice* to be filed)
Ryan T. Jenny (*pro hac vice* to be filed)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiffs*